No. 31,494

W. J. PIRTLE, *Appellant,* v. JOHN FREDENBURG and L. FREDENBURG, *Appellees.*

(33 P. 2d 149.)

Opinion filed June 9, 1934.

*A. E. Crane* and *A. Harry Crane,* both of Topeka, for the appellant.

*Owen S. Samuel,* of Emporia, and *Harry E. Snyder,* of Council Grove, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The question in this appeal is whether the trial court erred in denying a motion for a new trial based on the ground of newly discovered evidence.

The Citizens State Bank of Council Grove failed, and a remnant of the assets was sold by the receiver to plaintiff. Included in the purchase was a note to the bank for $2,500, dated August 30, 1927, payable in thirty days, and signed by John Fredenburg and L. Fredenburg. In an action by the purchaser against the makers of the note, judgment was rendered against John Fredenburg, but the verdict and judgment were in favor of L. Fredenburg.

On August 30 John Fredenburg was indebted to the bank on a thirty-day note for an amount which, for purpose of the decision, may be stated to be $1,500. Desiring to borrow more money to pay for garage equipment, John signed the note sued on. The $1,500 note was marked paid, was delivered to John, and he was

given credit for the difference between the amount of the old note and the amount of the new note. The bank's deposit slip was dated August 31. L. Fredenburg testified he did not sign the note until about September 8, when he was called into the bank by M. E. Leatherwood, cashier and managing officer of the bank. A conversation ensued, the result of which was that L. Fredenburg was induced to sign the note without consideration and to accommodate the bank.

The note fell due September 29, 1927. Payments not made by L. Fredenburg, amounting to $735, were credited on the note on September 23, 1927. The receiver did not see fit to sue on the note. The liquidation sale occurred on November 4, 1930, more than three years after maturity of the note. Plaintiff's action was commenced March 14, 1932, six and a half months before action would have been barred by limitation.

It would serve no useful purpose to set out in detail L. Fredenburg's version of the conversation with Leatherwood. L. Fredenburg's testimony was corroborated by the testimony of his son John. L. Fredenburg's testimony was contradicted by Leatherwood. Leatherwood had been convicted of forgery and embezzlement in connection with his management of the bank.

The $1,500 note was a renewal note, and had been preceded by other thirty-day notes for money borrowed by John. Under cross-examination L. Fredenburg testified he had no recollection of signing the $1,500 note, and to the best of his knowledge he did not sign it. He also testified the $2,500 note was the only one he had signed. John testified he did not think his father's name was on the $1,500 note. The bank kept a discount record, a register, showing date, number, maker, and indorser of notes taken by the bank. It did not contain L. Fredenburg's name. Leatherwood testified the name of the first maker only was usually put down, but the register showed other two-name notes.

The court instructed the jury as follows:

"You are the exclusive judges of the facts, of the weight of the testimony, and of the credibility of the witnesses. In passing upon the testimony of any witness you have a right to take into consideration the conduct and demeanor of the witness upon the stand, his interest or lack of interest in the event of this suit, the probability or improbability of the truth of his statements, his means of knowing the facts about which he testifies, and every other fact and circumstance appearing upon the trial; and you may bring to your aid the knowledge which you have in common with mankind about the ordinary af-

fairs of life. If you believe that any witness has willfully and corruptly testified falsely in regard to any material matter in connection with this trial, you are at liberty to disregard the whole or any part of the testimony of such witness."

No complaint is made of this instruction.

Plaintiff filed a motion for new trial on the ground of newly discovered evidence, and supported the motion by his own affidavit. The answer had pleaded L. Fredenburg's defense *in extenso*. Plaintiff's affidavit disclosed great diligence before trial in searching the records and files of the bank for notes and for all other evidence which might show L. Fredenburg had been a joint maker with John Fredenburg of notes in the series ending with the one sued on. After the trial plaintiff went back to the room where the bank records and papers were stored, and found three notes signed by John and L. Fredenburg, as follows: one for $2,355, dated October 30, 1926, due November 29, 1926; one for $1,750, dated February 4, 1927, due March 6, 1927; one for $1,750, dated March 6, 1927, due April 5, 1927. It may be assumed from the language of the affidavit that no renewal notes dated April 5, and corresponding dates of May, June and July, were found.

The affidavit was not carefully drawn. It said the discount register had not been found up to the time the affidavit was made; but the discount register, or some register of notes having the form and purpose of a discount register, was used at the trial in cross-examination of Leatherwood. The affidavit said plaintiff had no reason to believe the notes which were found would be found; but the affidavit said plaintiff made thorough search for just such notes. The affidavit said that with all the diligence exercised before the trial it was impossible to discover the notes; but the affidavit said plaintiff subsequently looked in a box in the room where the bank's records and papers were kept, and found the notes. The box contained miscellaneous papers, a class which would likely include old notes not returned to makers, as frequently occurs. The result is, diligence to discover the evidence was not well established.

The court gave the jury the following instruction:

"In this action the plaintiff, Mr. Pirtle, is the owner and holder of the note sued upon, executed by L. Fredenburg and his son. The only question submitted for your determination is as to whether or not the defendant, L. Fredenburg, is obligated upon this note. There is no controversy as to the unpaid balance, which, together with interest up to the present date, amounts to $2,510.02. The defendant, L. Fredenburg, says that he did not sign this note

until some days after it had been executed by his son and credit given to his son; and if you find from a preponderance of the evidence that he did not sign this note until after it had been executed by his son and accepted by the bank, then your verdict should be for him. If you find, however, that this note had been signed by him at the time it was accepted by the bank and credit given for it, then your verdict should be for the plaintiff for the amount which I have indicated. This is the only question there is, gentlemen, for you to determine."

No complaint is made of this instruction, and it is the law of the case. Under the instruction it was wholly immaterial whether L. Fredenburg had signed previous notes. The subject of signing previous notes was a purely collateral matter, first developed in cross-examination of L. Fredenburg.

The specific purpose of the discovered notes as evidence was to impeach the testimony of L. Fredenburg on the collateral matter indicated. Incidentally, the notes would corroborate the testimony of Leatherwood that the second name on a note frequently would not appear on the discount register.

Finally, the evidence offered at the hearing on the motion for new trial was cumulative, and the result is there were four well-recognized grounds for denying the motion for new trial. The motion was denied generally.

L. Fredenburg was a resident of Council Grove, a member of the city commission, and a veterinary surgeon of many years' practice. Leatherwood had a record the character of which has been indicated. The note was old, and the receiver of the bank had not undertaken to collect it for the benefit of creditors and stockholders of the bank. Even if Fredenburg had not merely forgotten, and had falsified with respect to signing notes for his son John, it is not likely a jury would prefer Leatherwood's testimony with respect to when this note was signed and accepted by the bank. However this may be, the district court was of the opinion there was no fair probability a different result would be reached if a new trial were granted, and this court is not prepared to make a positive assertion to the contrary.

The judgment of the district court is affirmed.